287 N.J. Super. 198 (1996)
670 A.2d 1075
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
MICHAEL J. MALIA, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1995.
Decided February 2, 1996.
*200 Before Judges MICHELS, BAIME and KIMMELMAN.
Susan L. Reisner, Public Defender, attorney for appellant and cross-respondent (Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the letter brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent and cross-appellant (Debra A. Owens, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Michael J. Malia was found guilty of possession of cocaine, a crime of the third degree, in violation of N.J.S.A. 2C:35-10a(1). The trial court denied defendant's motions for a new trial or, alternatively, a judgment of acquittal notwithstanding the verdict, and placed defendant on three years probation with strict narcotic controls and conditioned his probation upon working four days a week and obtaining his driver's license within thirty days. Finally, the trial court suspended defendant's New Jersey driver's license for six months, concurrent with and co-terminus to his previous driver's license suspension. The trial court waived the Violent Crime Compensation Board, the Drug Enforcement and Demand Reduction penalties and the forensic laboratory fee. Defendant appeals and the State cross-appeals.
*201 Defendant seeks a reversal of his conviction and a remand for a new trial on the following grounds set forth in his letter brief:
I. THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE STATE FAILED TO PROVE THAT ORDERING DEFENDANT TO EXIT THE VEHICLE AND SEARCHING THE AREA UNDER HIS SEAT WAS JUSTIFIED AND REASONABLE IN SCOPE.
II. THE INACCURATE AND OUT-DATED JURY CHARGE ON REASONABLE DOUBT VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW. (Not Raised Below.)
We have carefully considered these contentions and all the arguments advanced by defendant in support of them and find that they are without merit and require only the following comments in a written opinion. R. 2:11-3(e)(2).

I.
First, we are satisfied the trial court properly denied defendant's motion to suppress the cocaine seized from defendant's motor vehicle during the roadside stop. Under both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, a warrantless search and seizure is prima facie invalid and can be justified only if it falls within a specific exception. State v. Demeter, 124 N.J. 374, 379-80, 590 A.2d 1179 (1991); State v. Hill, 115 N.J. 169, 173, 557 A.2d 322 (1989); State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327 (1980). The Fourth Amendment does not, however, proscribe all searches and seizures, rather it only proscribes those that are judicially deemed unreasonable. State v. Davis, 104 N.J. 490, 498-99, 517 A.2d 859 (1986); State v. Bruzzese, 94 N.J. 210, 216-17, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); see also State v. Anderson, 198 N.J. Super. 340, 348, 486 A.2d 1311 (App.Div.), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985). Indeed, "the touchstone of the Fourth Amendment is reasonableness." State v. Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320. In cases involving warrantless searches, the burden is on the State to prove the overall reasonableness and validity of the search. Id. at 218, 463 A.2d 320.
*202 The resolution of such Fourth Amendment issues is particularly dependent upon the facts involved. Commonly, such constitutional issues involve no more than a seasoned "value judgment upon a factual complex rather than an evident application of a precise rule of law." See State v. Funicello, 60 N.J. 60, 72, 286 A.2d 55 (Weintraub, C.J., concurring), cert. denied, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). This is especially true with regard to investigatory stops and detentions. Our Supreme Court has held that under a narrowly defined and controlled set of circumstances, such detentions can be constitutionally permissible, although based on less than probable cause. In State v. Hall, 93 N.J. 552, 561, 461 A.2d 1155, cert. denied, 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983), the Court pointed out in a somewhat related context that:
Our reading of Davis convinces us that for certain detentions  those that do not entail significant intrusions upon individual privacy or freedom, are productive of reliable evidence, and can be effectuated without abuse, coercion or intimidation  "no probable cause in the traditional sense" is necessary in order to obtain the "authorization of a judicial officer[.]" We conclude that, under a "narrowly defined" set of circumstances, such detentions can be constitutionally permissible, Davis, 39 [394] U.S. [721] at 727-28, 89 S.Ct. [1394] at 1398, 22 L.Ed.2d [676] at 681. Strictly limiting the circumstances under which such detentions take place insures that the restrictions upon individual privacy and freedom interests are minimized so that a showing of need upon less than traditional probable cause can be tolerated.
Further, it is firmly settled that law enforcement officials may stop motor vehicles where they have a reasonable and articulable suspicion that a motor vehicle violation has occurred. See, e.g., New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); State v. Carter, 235 N.J. Super. 232, 561 A.2d 1196 (App.Div. 1989); State v. Pierce, 190 N.J. Super. 408, 463 A.2d 977 (App.Div. 1983); State v. Nugent, 125 N.J. Super. 528, 312 A.2d 158 (App.Div. 1973); State v. Griffin, 84 N.J. Super. 508, 202 A.2d 856 (App.Div. 1964).
*203 Applying these fundamentally sound principles here, there cannot be the slightest doubt on this record that Bergen County Police Officer Lynam had an articulable and reasonable suspicion that a motor vehicle violation had occurred, justifying the investigatory stop and detention of the vehicle in which defendant was a passenger. This vehicle was traveling with no rear lights. As the vehicle was pulled over, Officer Lynam shined his spotlight and take-down lights on the vehicle and observed defendant bend down towards the floor. Officer Lynam approached the vehicle and when he leaned down and requested the driver's credentials, he detected the odor of alcohol on the driver's breath and coming from the interior of the car. Officer Lynam then asked the driver if he had been drinking and the driver responded that he had two beers.
Officer Lynam plainly had probable cause to believe that a crime had been committed based on the furtive movements of defendant and the odor of alcohol emanating from the interior of the vehicle and, therefore, was justified in asking the driver and defendant to exit the vehicle and in searching the vehicle. See Pennsylvania v. Mimms, supra, 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337; State v. Smith, 134 N.J. 599, 617-20, 637 A.2d 158 (1994); State v. Anderson, supra, 198 N.J. Super. at 351, 486 A.2d 1311; State v. Nittolo, 194 N.J. Super. 344, 346, 476 A.2d 1253 (App.Div. 1984). Cf. State v. Judge, 275 N.J. Super. 194, 202-03, 645 A.2d 1224 (App.Div. 1994) (holding that odor of marijuana emanating from vehicle provides probable cause to search). Since the stop of the vehicle passed constitutional muster, it follows that the cocaine seized was not the "fruit of the poisonous tree." See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Accordingly, the order denying the motion to suppress is affirmed.

*204 II.
Defendant contends for the first time on appeal that the trial court improperly diluted the State's burden of proof and deprived him of his right to due process by deviating from the model jury charge on reasonable doubt. More precisely, defendant challenges the use of the words "moral certainty", pointing to the following excerpt from the charge to support his argument:
Reasonable doubt is not a mere possible or imaginary doubt because as everyone knows everything pertaining to human affairs is subject to some possible or imaginary doubt. A reasonable doubt is an honest and reasonable uncertainty as to the guilt of the defendant existing in your minds after you have given full and impartial consideration to all of the evidence. Reasonable doubt may arise from the evidence itself or from the lack of evidence.
In order to convict the law does not require that you be absolutely certain of the guilt of the defendant. The law requires moral certainty. To meet the requirements of finding the defendant guilty beyond a reasonable doubt and to a moral certainty you must have, after an evaluation of the facts and the evidence in this case, an abiding belief of his guilt and you must have that abiding belief to a moral certainty.

[Emphasis added.]
The phrase "moral certainty" became common in jury charges after the Massachusetts Supreme Court's opinion in Massachusetts v. Webster, 59 Mass. 295 (1850). The Webster charge was approved of and became a standard definition of reasonable doubt in our State. See Donnelly v. State, 26 N.J.L. 601, 615 (E. & A. 1857); State v. Linker, 94 N.J.L. 411, 417, 111 A. 35 (E. & A. 1920); State v. Rubenstein, 104 N.J.L. 291, 294, 140 A. 287 (Sup.Ct. 1928). In State v. Lane, 52 N.J. 123, 125-26, 244 A.2d 108 (1968), our Supreme Court held that the omission of the phrase "abiding conviction to a moral certainty" in a reasonable doubt charge was not error. Further, by 1974 we noted that the phrase "abiding conviction ... to a moral certainty" had "not been in general use for several years." State v. Sherwin, 127 N.J. Super. 370, 390, 317 A.2d 414 (App.Div.), certif. denied, 65 N.J. 569, 325 A.2d 703, petition dismissed sub nom., Loughran v. New Jersey, 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974).
The Supreme Court confronted the issue of whether a jury instruction employing the term "moral certainty" violated the Due *205 Process Clause in the consolidated cases of Victor v. Nebraska, and Sandoval v. California ("Victor"), 511 U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In the first part of the opinion dealing with defendant Arthur Sandoval the Supreme Court stated that it was "concerned with Sandoval's argument that the phrase `moral certainty' has lost its historical meaning, and that a modern jury would understand it to allow a conviction on proof that does not meet the beyond a reasonable doubt standard." Id. at ___, 114 S.Ct. at 1247, 127 L.Ed.2d at 595. The Supreme Court acknowledged that:
Words and phrases can change meaning over time: a passage generally understood in 1850 may be incomprehensible or confusing to a modern juror. And although some contemporary dictionaries contain definitions of moral certainty similar to the 19th century understanding of the phrase ... we are willing to accept Sandoval's premise that "moral certainty," standing alone, might not be recognized by modern jurors as a synonym for "proof beyond a reasonable doubt".
[Ibid.]
The Supreme Court also stated that "it does not necessarily follow that the California instruction is unconstitutional," ibid., explaining that:
The problem is not that moral certainty may be understood in terms of probability, but that a jury might understand the phrase to mean something less than the high level of probability required by the Constitution in criminal cases.
... An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof.
[Id. at ___, 114 S.Ct. at 1247, 127 L.Ed.2d at 596.]
The Supreme Court went on to look at other language in the instruction and concluded that in that case "the reference to moral certainty, in conjunction with the abiding conviction language, `impress[ed] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused.'" Ibid. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571 (1979)).
In a slight variation of his first argument, Sandoval also argued that a juror might be convinced to a moral certainty that the defendant was guilty despite the fact that the government has failed to prove his guilt beyond a reasonable doubt. Id. at ___, 114 S.Ct. at 1248, 127 L.Ed.2d at 596. The Supreme Court noted *206 that the definition contained in a widely used dictionary supported this argument. Ibid. The Supreme Court again looked at other language in the instruction which indicated that the jurors must base their decision on the evidence produced in the case. Id. at ___, 114 S.Ct. at 1248, 127 L.Ed.2d at 596-97. In light of this language the Supreme Court concluded that:
We do not think it reasonably likely that the jury understood the words moral certainty either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof. At the same time, however, we do not condone the use of the phrase. As modern dictionary definitions of moral certainty attest, the common meaning of the phrase has changed since it was used in the Webster instruction, and it may continue to do so to the point that it conflicts with the Winship standard.... But we have no supervisory power over the state courts, and in the context of the instructions as a whole we cannot say that the use of the phrase rendered the instruction given in Sandoval's case unconstitutional.
[Id. at ___, 114 S.Ct. at 1248, 127 L.Ed.2d at 597.]
In the second portion of the case dealing with defendant Clarence Victor the Supreme Court again dealt with a charge that employed the term "moral certainty," stating that:
Instructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract.... The instruction also equated a doubt sufficient to preclude moral certainty with a doubt that would cause a reasonable person to hesitate to act. In other words, a juror morally certain of a fact would not hesitate to rely on it; and such a fact can fairly be said to have been proven beyond a reasonable doubt.... There is accordingly no reasonable likelihood that the jurors understood the reference to moral certainty to allow conviction on a standard insufficient to satisfy Winship, or to allow conviction on factors other than the government's proof. Though we reiterate that we do not countenance its use, the inclusion of the moral certainty phrase did not render the instruction given in Victor's case unconstitutional.
[Id. at ___, 114 S.Ct. at 1250-51, 127 L.Ed.2d at 600 (citations omitted).]
We are satisfied that the portion of the jury charge challenged on this appeal did not dilute defendant's right to be found guilty solely upon proof beyond a reasonable doubt. On the contrary, when the jury charge is read in its entirety, as it must be, see State v. Marshall, 123 N.J. 1, 135, 586 A.2d 85 (1991); State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973), it is clear that the trial court properly instructed the jury on the State's burden of proving guilt beyond a reasonable doubt. Furthermore, the trial *207 court repeatedly referred to the State's burden of proving guilt beyond a reasonable doubt and emphasized that the State's burden existed with respect to each element of the crime charged.
While the words "moral certainty" standing alone may not necessarily be synonymous with proof beyond a reasonable doubt, as used in the charge in this case, they did not dilute the State's burden of proof and violate his right to a fair trial. See Victor v. Nebraska, supra, 511 U.S. at ___, ___, 114 S.Ct. at 1247, 1250-51, 127 L.Ed.2d at 596, 599-600. In sum, the charge satisfied the standard of In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970), and does not in any way violate defendant's due process rights or require reversal of his conviction.
However, even though we do not find that the use of the words "moral certainty" diluted defendant's right to be found guilty beyond a reasonable doubt in this case, we nevertheless disapprove of the use of those words in defining reasonable doubt and explaining the State's burden of proof in a criminal case. We strongly suggest, therefore, that trial courts not augment the model charge on reasonable doubt in any way.[1]See State v. Hudson, 286 N.J. Super. 149, 153-54, 668 A.2d 457, 459 (App.Div. *208 1995). The current version of the model jury charge contains no mention of the term "moral certainty" and also avoids the "hesitate to act" standard which has received some criticism. See Victor, supra, 511 U.S. at ___, 114 S.Ct. at 1252, 127 L.Ed.2d at 601-02 (Ginsburg, J., concurring); Arizona v. Portillo, 182 Ariz. 592, 898 P.2d 970, 974 n. 5 (1995). As such it is the proper instruction for a trial court to use.

III.
Finally, we agree with the State that the trial court erred in suspending the mandatory $50 Violent Crimes Compensation Board penalty (N.J.S.A. 2C:43-3.1a(2)(a)), the $1,000 Drug Enforcement Demand Reduction penalty (N.J.S.A. 2C:35-15) and the $50 forensic laboratory fee (N.J.S.A. 2C:35-20). N.J.S.A. 2C:43-3.1a(2)(a) requires, in pertinent part, that "any person convicted of any disorderly persons offense, any petty disorderly persons offense, or any crime not resulting in the injury or death of any other person shall be assessed $50.00 for each such offense...." (Emphasis added.) Similarly, N.J.S.A. 2C:35-15a states, in pertinent part, that "every person convicted of or adjudicated delinquent for a violation of any offense defined in this chapter ... shall be assessed for each such offense a penalty fixed at: ... (3) $1,000.00 in the case of a crime of the third degree." (Emphasis added.) And N.J.S.A. 2C:35-20a requires, in pertinent part, that "any person convicted of an offense under this chapter shall be assessed a criminal laboratory analysis fee of $50.00 for each offense for which he was convicted." (Emphasis added.) None of these statutes provides for the waiver of the penalties or fees except for a rehabilitation exception found in N.J.S.A. 2C:35-15(e), which is plainly not applicable here. These penalties are mandatory and must be imposed regardless of defendant's ability to pay or any other factors enumerated in N.J.S.A. 2C:44-2.

IV.
Accordingly, except to remand the matter to the trial court to impose the statutorily mandated Violent Crimes Compensation *209 Board and Drug Enforcement Demand Reduction penalties and forensic laboratory fee, the judgment of conviction under review is affirmed.
NOTES
[1] The Model Jury Charge for describing reasonable doubt states, in relevant part, that:

The burden of proving each element of a charge beyond a reasonable doubt rests upon the State and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his/her innocence or offer any proof relating to his/her innocence.
Reasonable doubt is not a mere possible or imaginary doubt, because everything relating to human affairs is open to some possible or imaginary doubt.
A reasonable doubt is an honest and reasonable uncertainty as to the guilt of the defendant existing in your minds after you have given full an impartial consideration of all of the evidence. It may arise from the evidence itself or from a lack of evidence.
[Model Jury Charge (Criminal Final Charge) Presumption of Innocence, Burden of Proof, Reasonable Doubt (May 23, 1994).]