**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1384-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LATIF GADSON, a/k/a
QUAMIR WILLIAMS,

    Defendant-Appellant.

_____

> Argued May 21, 2019 – Decided July 8, 2019
>
> Before Judges Suter, Geiger and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-12-1001.
>
> Stefan Van Jura, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stephen W. Kirsch, Assistant Deputy Public Defender, on the brief).
>
> Sarah C. Hunt, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sarah C. Hunt, of counsel and on the brief).

PER CURIAM

Defendant Latif Gadson appeals his judgment of conviction for third-degree aggravated assault. He contends the trial court's jury instruction about "extreme indifference to human life" was "manifestly" incorrect. He also contends that his discretionary extended term sentence was excessive because the court double counted his convictions. We reject these arguments, finding no basis to reverse the judgment of conviction or sentence.

While waiting near the Temple Street Bridge in Paterson to pick up her grandson from school, Cynthia Pilgrim saw a man take off his clothes and cross the bridge dressed only in socks. As he passed an older woman on the bridge, who held shopping bags in her hands, he savagely hit her in the head. He repeatedly punched her body and tried unsuccessfully to throw her off the bridge. Pilgrim, who was minding another grandchild, directed her daughter, Atilla Bundick, to help the woman, and gave Bundick a can of mace and a taser. Bundick kicked defendant between his legs, tased him and gave him a "face mace bath." She chased him when he ran to a nearby store. Pilgrim assisted the victim who was not then responsive.

The victim testified she was on the bridge talking to a man when she "felt a punch . . . on the left side of [her] head." When she "came to . . . somebody

2

[was] holding [her] arms in the back" and her head was pounding. She testified the pain continues to come and go.

Defendant was indicted for second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). He was convicted by a jury of the lesser-included offense of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). The State's motion to sentence defendant as a persistent offender under N.J.S.A. 2C:44-3(a) was granted. He was sentenced to a term of seven and one-half years to be served consecutively to a five-year term of incarceration imposed by another judge for violation of probation.[1] This appeal followed.

Defendant raises the following issues:

POINT I

> THE DEFINITION OF THE OFTEN-USED PHRASE "UNDER CIRCUMSTANCES MANIFESTING EXTREME INDIFFERENCE TO HUMAN LIFE" SHOULD NOT BE INTERPRETED TO CHANGE FROM CRIMINAL STATUTE TO CRIMINAL STATUTE; RATHER THE DEFINITION OF THAT PHRASE AS FIRST INTERPRETED IN STATE V. CURTIS, AND APPROVED THEREAFTER BY THE NEW JERSEY SUPREME COURT, SHOULD APPLY WHENEVER IT IS USED IN THE CODE. CONSEQUENTLY, THE JURY INSTRUCTION ON THIRD-DEGREE AGGRAVATED ASSAULT WAS MANIFESTLY INCORRECT.

---

[1] That sentence is not part of this appeal.

<u>POINT II</u>

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

We do not agree that either issue warrants reversal of defendant's conviction or sentence.

Because there was no objection made to the jury instruction at trial, we review that issue for plain error, meaning that our inquiry is to determine whether this was an error that was "clearly capable of producing an unjust result." <u>R.</u> 2:10-2; <u>see</u> <u>State v. Macon</u>, 57 N.J. 325, 336 (1971). Under that standard, reversal of defendant's conviction is required if there was error "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." <u>State v. Green</u>, 447 N.J. Super. 317, 325 (App. Div. 2016) (quoting <u>Macon</u>, 57 N.J. at 336).

We consider the charge as a whole in determining whether it was prejudicial. <u>State v. Outland</u>, 458 N.J. Super. 357, 372 (App. Div. 2019) (citing <u>State v. Wilbely</u>, 63 N.J. 420, 422 (1973)). "[A]ppropriate and proper [jury] charges are essential for a fair trial." <u>State v. Baum</u>, 224 N.J. 147, 158-59 (2016) (quoting <u>State v. Reddish</u>, 181 N.J. 553, 613 (2004)). Where no objection is made to a jury instruction, this creates "a presumption that the charge was not

error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing Macon, 57 N.J. at 333-34).

Defendant argues that use of the phrase "under circumstances manifesting extreme indifference to human life" should mean "circumstances that indicate a probability of death," but that in the instruction given here, the phrase referred to "a probability of only a significant bodily injury." Defendant contends the legislature used the same phrase in other related statutes and that it is supposed to mean the same thing each time. He argues the court did not properly define this phrase for the jury because in this case, involving a third-degree aggravated assault, it was defined to mean a probability of significant injury, rather than of death. Defendant argues this "could easily affect the verdict in a case where the risk of significant injury was likely probable, but the risk of death perhaps only possible." We find no merit in this argument.

The judge instructed the jury on the lesser included offense of third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(7). Under that statute, a person is guilty of aggravated assault if one:

> attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury.

The jury charge followed this statutory language. The court defined "significant bodily injury" consistent with its definition in N.J.S.A. 2C:11-1(d)[2], adding only that the five senses are "sight, hearing, taste, touch and smell." The court told the jury that the State must prove defendant acted "purposely or knowingly or acted recklessly under circumstances manifesting extreme indifference to the value of human life." The court separately defined "purposely" consistent with N.J.S.A. 2C:2-2(b)(1), and "knowingly" consistent with N.J.S.A. 2C:2-2(b)(2), because either type of culpability would satisfy N.J.S.A. 2C:12-1(b)(7).

Defendant challenges the jury instruction on the third type of culpability: "recklessly under circumstances manifesting extreme indifference to the value of human life."[3] In the jury charge, the court defined "recklessly" consistent with N.J.S.A. 2C:2-2(b)(3). It then discussed the phrase "manifesting extreme indifference to the value of human life."

> The phrase "under circumstances manifesting extreme
> indifference to the value of human life" does not focus

---

[2] N.J.S.A. 2C:11-1(d) states, "'[s]ignificant bodily injury' means bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses."

[3] The verdict sheet contained a single question on the lesser included offense that included all three types of culpability. Thus, we do not know if the jury convicted based on this type of culpability.

on the state of mind of the actor, but rather on the circumstances under which you find that he acted. If, in light of all the evidence, you find that the conduct of the defendant resulted in a probability as opposed to a mere possibility of significant bodily injury, then you may find that he acted under circumstances manifesting extreme indifference to the value of human life.

In determining whether the defendant acted purposely or knowingly or acted recklessly under circumstances manifesting extreme indifference to the value of human life, you may consider the nature of the acts themselves, and the severity of the resulting injuries to [the victim].

The court's jury instruction made clear that defendant could be found guilty if he caused bodily injury to another or "attempted to cause significant bodily injury to another." The court defined "attempt" consistent with N.J.S.A. 2C:5-1(a).

Defendant simply is incorrect that the court instructed the jury using the phrase "under circumstances manifesting extreme indifference to human life." That is not what the court said. It is not part of the definition of aggravated assault under N.J.S.A. 2C:12-1. Defendant is citing to language from the aggravated manslaughter statute, which provides that "[c]riminal homicide constitutes aggravated manslaughter when . . . the actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). The assault statutes are in Chapter Twelve of Title 2C and use a

different phrase: "under circumstances manifesting extreme indifference to the value of human life."

In interpreting a statute, we first "look to the plain language of the statute." Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014). The assault statute does not refer to death. If the legislature meant to require an assault that would likely cause death, it would have said so. The legislature used the phrase "value of human life." We have said previously that "[t]his [phrase] differs from a probability of death resulting from the defendant's conduct . . . ." State v. Scher, 278 N.J. Super. 249, 272 (App. Div. 1994). Therefore, there is no reason to assume the legislature meant to restrict the statute as defendant suggests.

This charge also was consistent with the model charge on third-degree aggravated assault. Model Jury Charges (Criminal), "Aggravated Assault (N.J.S.A. 2C:12-1(b)(7))" (rev. May 16, 2005). Jury instructions given in accordance with model charges, or which closely track model charges, are generally not considered erroneous. Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 466 (2000). We are satisfied there was no error in this instruction and certain none that would constitute plain error.

We disagree with defendant's suggestion that we should not follow Scher. In State v. Moore, 158 N.J. 292, 302 (1999), our Supreme Court accepted Scher's

8

standard that "under circumstances manifesting extreme indifference to the value of human life means a probability as opposed to a mere possibility of causing such injury." The instruction given here was consistent with this, because it required the jury to find a probability of significant injury rather than just a possibility. We see no basis to question Scher's continued viability based on this or other case law cited by defendant.

Defendant was sentenced to an extended sentence as a persistent offender under N.J.S.A. 2C:44-3(a). Because he was convicted of a third-degree offense, he was subject to a term of incarceration between five and ten years. N.J.S.A. 2C:43-7(a)(4).

In sentencing defendant, the court gave "great weight" to aggravating factors three (the risk that defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and nine (the need to deter defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6) and (9). The court noted defendant's "violent history in addition to a longstanding criminal history involving indicatable offenses, a total of [sixteen] adult arrests with [seven] indictable convictions." His involvement in drug treatment programs while on probation did not "sufficient[ly] . . . deter [defendant] from criminal behavior."

9

The court found aggravating factor twelve, N.J.S.A. 2C:44-1(a)(12), ("[t]he defendant committed the offense against a person who he knew or should have known was [sixty] years of age or older, or disabled"), but found it to be a "nominal" factor in the sentencing. The court also found certain "non-statutory mitigating factors," such as defendant's "underlying psychopathology," drug use, efforts to rehabilitate while in jail, remorse, and educational achievements, weighed against imposing the maximum extended term. The court "temper[ed]" defendant's sentence from a possible ten-year term to a term of seven years and six months, even though defendant committed this offense while on probation.

Defendant does not dispute that he satisfied the statutory definition of a persistent offender: he was twenty-one or older when the assault occurred, he had been convicted "on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age," and the "latest of the crimes" or the "date of his last release," was within ten years of this offense. N.J.S.A. 2C:44-3(a).

Defendant argues the sentence was excessive because the trial court double counted his convictions by not separating "the prior offenses that triggered the extended-term from those used to set the length of that term,"

contrary to State v. Dunbar, 108 N.J. 80 (1987). Defendant does not dispute that his criminal record was extensive.

The convictions relied on for extended term sentencing would not have the same "qualitative weight" for sentencing, according to Dunbar,[4] but the court's decision rested on its "weighing and balancing of the aggravating and mitigating factors that it found." State v. Pierce, 188 N.J. 155, 169 (2006). As Dunbar said, "the primary focus [is] on the conduct that occasions the sentence." 108 N.J. at 92. The court gave great weight to the aggravating factors. It also considered other factors in sentencing defendant, such as prior attempts at rehabilitation while on probation, the need to protect the public because of the violent nature of the crime and the victim's age, and defendant's violent history.

We are satisfied that the court did not abuse its discretion in sentencing defendant within the extended term range. Pierce, 188 N.J. at 169-70. The findings of aggravating and mitigating factors were based upon competent and credible evidence in the record. Defendant's sentence did not violate the sentencing guidelines nor was it excessive for this offense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] 108 N.J. at 92.

A-1384-17T4